**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRONE THOMAS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 15-1526 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF PENNSYLVANIA, | ) | |
| MICHAEL OVERMEYER, *Superintendent of* | ) | Re:  ECF No. 27 |
| *SCI-Forest*, and DISTRICT ATTORNEY OF | ) | |
| ALLEGHENY COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>OPINION AND ORDER</u>

Tyrone Thomas ("Petitioner") was charged in 2010 with, *inter alia*, criminal homicide as a co-conspirator in connection with the shooting death of a man walking his dog in a failed attempt to rob the victim.  In 2011, Petitioner was charged with, inter alia, two counts of aggravated assault and four counts of recklessly endangering another in connection with Petitioner shooting a gun into an occupied residence.  At the time of the crimes, Petitioner was 16 years old.  The two sets of criminal charges were consolidated, and Petitioner, upon advice of counsel, accepted a plea deal and pleaded guilty and was sentenced in accordance with the plea deal to an aggregate term of 40 – 80 years of imprisonment.   As a consequence of his guilty plea, Petitioner is currently serving his sentence.

In the Amended Petition, ECF No. 27, which is the operative petition, Petitioner raised three Grounds for Relief:  1) newly discovered evidence of an affidavit from a co-conspirator in the homicide case that Petitioner contends exonerates him; 2)  an unlawfully induced guilty plea; and 3) ineffective assistance of counsel.  Because Grounds One and Two have been procedurally defaulted and because Ground Three is meritless, the Amended Petition will be denied.  Because

jurists of reason would not find this disposition debatable, a certificate of appealability will be

denied.

## I. FACTUAL BACKGROUND

The Pennsylvania Superior Court in its opinion on direct appeal, which was decided May

21, 2013, described the factual basis of the plea as follows:

> [As to case number CP–02–CR–0004968–2010,] [t]his incident
> occurred on March 14 of 2010. The victim in this case, Mark
> Barry, who was 55 years old and a retired firefighter for the City of
> Pittsburgh, was a resident of the North Side, Marshall–Shadeland
> area. He was walking his dog on Mullins Street, at which time he
> was fatally shot. He was shot once in the chest, which pierced his
> heart, and once in the arm.
>
> Shortly after 10:00 p.m., on [March 14], his body was found lying
> on his back on Mullins Street, approximately 40 feet off of
> Woodland Avenue. Two nine-millimeter casings were also found
> at the scene by the police.
>
> The victim was declared dead at the scene by paramedics. Dr. Xu
> of the Allegheny County Medical Examiner's Officer performed
> the autopsy and found that the cause of death was a gunshot wound
> of the trunk, and the manner of death, homicide.
>
> Homicide detectives investigated this case and reviewed video
> surveillance from a camera placed by a neighborhood group that
> was located at Shadeland Avenue and at Woodland Avenue, and
> the video showed the victim walking down the street with his dog,
> followed by four young males.
>
> The police were able to identify these four young males, who
> included [Appellant] and Cordell Brown, who was the co-
> defendant.
>
> During the course of their investigation, the detectives also learned
> that the victim—the bullet that killed the victim was a nine
> millimeter.

A week later, also, the detectives learned of the shooting of Portia Smithson's house, which is involved in the other criminal investigation—criminal information which I'll get to.

The detectives, Weismantle and Hoffman, of city homicide, interviewed [Appellant], on March 31st of 2010, after they had spoken with his uncle and got permission for him to come down to homicide and speak with them. He signed a Miranda rights form, waived his rights to remain silent, and to an attorney, and gave the following statement.

[Appellant] stated that on the day of the killing, he, Cordell Brown, and another young man named Larry Brown and another one named Derek, later identified as Derick Ambush, were spending the day together. [Appellant] admitted that on that day he was carrying a firearm on his person that he bought from someone a couple months earlier. It was a nine-millimeter Hi–Point semiautomatic pistol.

They were sitting on a porch of a house located on Woodland Avenue when one of the young men said I want some money, and the four young men discussed doing a robbery and agreed to rob the first person they saw.

Following their conversation, they saw the victim walking his dog. Cordell Brown said there's our first victim, and they began to follow the victim on Woodland Avenue, where they were viewed by the video cameras.

As the victim turned onto Mullins Street, [Appellant] said that Cordell Brown approached the victim and asked him if his dog— does your dog bite? The victim laughed in a polite way and said no, he's a good fellow. [Appellant] says that Cordell Brown then pulled the gun from his right side and shot the victim twice.

[Appellant] said that although he had been carrying the gun, he gave the gun to Cordell Brown immediately before the confrontation with the victim, Mark Barry.

[Appellant] said they were unable to actually rob the victim because the dog guarded the victim's body. They ran away to a girl's house, and when he left there, [Appellant] took the pistol with him.

3

He also was found not to possess a license to carry that firearm, in addition to being under 21 years old, and therefore, statutorily incapable of possessing a firearm.

That would be the case at [CP–02–CR–0004968–2010]. The second case, [CP–02–CR–0002359–2011], occurred exactly one week later, on the following Sunday night, on March 21st of 2010, approximately 1:30 a.m. The residence of Portia Smithson, located at 1100 Hall Street, also on the North Side of the City of Pittsburgh, was shot at numerous times.

Ms. Smithson and her boyfriend were in her second-floor front bedroom, along with a one-year-old infant, when numerous gunshots came through the window, which shattered powder from the doorway or the wall landed on the baby. They fled from the room and called the police. There were numerous bullet holes in the bedroom.

Also in the residence at the time of the shooting was Krista Kellem, another one of the named victims, and—well, Samuel Mitchell, who's the boyfriend. There were also two 14-year-olds and, as I said, the baby.

The detectives processed the scene and found a number of bullets, spent bullets, bullet holes and eight nine-millimeter casings on the street across from the residence.

Examination by the Allegheny County Medical Examiner's Office revealed that the casings used in this incident had been fired from the same firearm as was used in the incident involving the murder of Mark Barry....

When the detectives interviewed [Appellant], about the death of Mark Barry, they also asked him about the shooting of Portia Smithson's house, and [Appellant] admitted that he had used the same firearm to shoot up Portia Smithson's house.

The motive for that was that Portia Smithson had earlier been involved in an altercation with a friend of his, Larry Brown, and had stabbed Larry Brown. And this was also verified by the police. They have police reports on that.

> As I said, [Appellant] did not possess a license to carry a firearm in either incident.

N.T. 5/2/11 at 18–24.

Com. v. Thomas, 67 A.3d 838, 839–41 (Pa. Super. 2013); See also ECF No. 13-7 at 26 – 29.

## II. PROCEDURAL HISTORY

### A. State Court

The Superior Court in its November 21, 2017, opinion disposing of the appeal in Petitioner's second Post Conviction Relief Act ("PCRA") proceedings, recounted the state court procedural history as follows:

> Following his arrest in connection with the March 14, 2010, shooting death of a retired firefighter, Mark Barry, Appellant was charged in the adult division of the trial court with criminal homicide, robbery, carrying a firearm without a license, and criminal conspiracy. Additionally, following his arrest in connection with the March 21, 2010 shooting into the occupied residence of Portia Smithson, Appellant was charged in the adult division of the trial court with two counts of aggravated assault, four counts of recklessly endangering another person, one count of conspiracy, one count of discharging a firearm into an occupied structure, and one count of possessing a firearm by a minor. Upon notice by the Commonwealth, the cases were joined, and on July 2, 2010, Appellant filed a counseled motion seeking to decertify the criminal proceedings and transfer the cases to the juvenile division.

> Following a hearing on the matter, the trial court denied Appellant's motion to decertify the criminal proceedings, and on May 2, 2011, Appellant proceeded to a guilty plea hearing....

> The Commonwealth, per the plea agreement, recommended an aggregate sentence of 40 to 80 years of imprisonment. The trial court accepted the plea and imposed the negotiated sentence. On direct appeal, this Court affirmed the trial court's denial of his decertification motion.

Appellant *pro se* filed a PCRA petition on October 15, 2013, but was subsequently granted leave by our Supreme Court to file a petition for allowance of appeal *nunc pro tunc*. The trial court initially appointed PCRA counsel, but later entered an order staying the PCRA action during the pendency of Appellant's direct appeal. Our Supreme Court denied Appellant's petition for allowance of appeal on April 4, 2014. Appellant filed another PCRA petition on May 6, 2014, stating substantially the same claims as in his original petition.

On September 2, 2014, PCRA counsel filed a motion to withdraw as counsel and a letter brief pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On September 25, 2014, the PCRA court granted counsel leave to withdraw and issued a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On February 25, 2015, the PCRA court entered an order denying the petition.

Appellant timely filed a notice of appeal. The PCRA court did not order Appellant to file a statement of errors complained of on appeal, and none was filed. In lieu of filing an opinion pursuant to Pa.R.A.P. 1925(a), the PCRA court pointed to its notice of intent to dismiss for its reasons for denying Appellant's petition. On appeal, Appellant present[ed] this Court with several arguments that his guilty plea was induced by the ineffective assistance of plea counsel.

**Commonwealth v. Thomas**, No. 483 WDA 2015, unpublished memorandum at *1 (Pa. Super. filed Sept. 28, 2015). By order and memorandum decision of September 28, 2015, this Court rejected Appellant's claims on the merits and, accordingly, affirmed the order denying Appellant PCRA relief.

On December 28, 2016, Appellant filed this, his second, PCRA petition, in which he raised a claim under the newly-discovered fact exception to the PCRA's time requirement, namely, that his co-defendant had admitted in a sworn affidavit to having shot their robbery victim without Appellant's prior consent to, or knowledge of, such a plan. On February 9, 2017, the PCRA court filed a Pa.R.Crim.P. 907 Notice of Intent to Dismiss the petition on grounds that Appellant's claim merited no relief. On February 17, 2017, Appellant filed a response to the court's notice in which he reiterated that his guilty plea represented a miscarriage of justice given his co-defendant's assumption of sole responsibility for the murder of their robbery victim.

On May 1, 2017, the court entered its order dismissing Appellant's PCRA petition, relying on reasons set forth in its earlier Rule 907 Notice. Specifically, the PCRA court determined that co-defendant's affidavit did not support the Appellant's claim, as the facts alleged in the affidavit were nearly identical to the District Attorney's summarization of facts at the guilty plea hearing, facts that sufficiently established Appellant's guilt for purposes of his plea. This appeal followed.

ECF No. 30-13 at 1 – 3.

The Superior Court affirmed the denial of PCRA relief in the second PCRA proceedings. Petitioner thereafter did not file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court.

### B.  Federal Court

Petitioner initiated this federal habeas proceeding on November 20, 2015, by filing a deficient Motion for Leave to Proceed In Forma Pauperis.  ECF No. 1.  Petitioner ultimately paid the filing fee and the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody was formally docketed.  ECF No. 5.  Service was ordered.  On March 15, 2016, Respondents filed an Answer, denying that Petitioner was entitled to any relief.   ECF No. 12. On December 28, 2016, Petitioner file a Motion to Hold Habeas Corpus in Abeyance.  ECF No. 17.  Petitioner sought to have these proceedings stayed because he allegedly discovered new evidence and wanted to present it to the state courts first.  Id.  Petitioner did not specify what this new evidence was, however, it was the affidavit of his co-conspirator, the same one which formed the basis of Petitioner's second PCRA proceedings in state court.  On January 5, 2017, the Court granted the Motion and the case was stayed.  ECF No. 18.

On March 8, 2018, the Court received several filings from Petitioner: 1) a document captioned as  "Amendment to Petition for Writ of Habeas Corpus" but which contained only one

ground for relief, namely, a newly discovered evidence claim based upon Petitioner's co-conspirator's affidavit which recanted the co-conspirator's statements previously given in connection with the murder case, ECF No. 21; 2) a Motion to Lift Stay Order, ECF No. 23; and 3) a Motion to Amend Petition for Writ of Habeas Corpus For State Prisoner ("Motion to Amend"), ECF No. 24.

On March 9, 2018, the Court granted Petitioner's Motion to Lift Stay and the Motion to Amend and required Petitioner to file a consolidated Amended Petition containing all of Petitioner's grounds for relief no later than April 9, 2018.  ECF No. 26.

On March 22, 2018, Petitioner filed his Amended Petition in which he raised three Grounds for Relief.  ECF No. 27.

**GROUND ONE:** Newly discovered evidence[.]

Id. at 5.

**GROUND TWO:** Unlawfully Induced Guilty Plea[.]

Id. at 7.

**GROUND THREE:**  Ineffective Assistance of Counsel[.]

Id. at 8.

Respondents filed their Answer to the Amended Petition, ECF No. 28, and attached to the Answer copies of much of the state court record.  ECF Nos. 29 and 30.  In their Answer, Respondents denied that Petitioner was entitled to any relief.

All parties have now consented to the exercise of plenary jurisdiction by a United States Magistrate Judge.  ECF Nos. 11 and 22.

8

## III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas petition was filed after its effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

## IV. DISCUSSION

### A.  Ground One - Newly Discovered Evidence

In Ground One, Petitioner raises a claim of newly discovered evidence.  More specifically, Petitioner asserts as supporting facts that:

> On 12/16/16, Appellant received a sworn, writ[t]en signed and dated Affidavit from his co-defendant [Cordell Brown] stating that Appellant had nothing to do with the events the night of Mark Barry's death, and taking Full Responsibility for the crime[s] in question and recanting his previous original statement.  The Affidavit also shows that Appellant's co-defendant told lies to the homicide detectives by saying the Appellant was the shooter and came up with the plan to do so to Mark Barry in his original statement.  Appellant's co-defendant also explains why he lied on Appellant to the homicide detectives in the Affidavit.

ECF No. 27 at 5.

Upon review, the Court finds that Petitioner procedurally defaulted Ground One because the Superior Court found that Petitioner failed to bring his Second PCRA Petition within the PCRA statute of limitations and thus, his new evidence claim was time barred under state law.

9

Alternatively, the Court finds that Ground One raises, in effect, a free-standing claim of actual innocence, which is not a cognizable claim in federal habeas proceedings.

### 1. Petitioner Procedurally Defaulted Ground One.

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court.  See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).  The United States Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief."  Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992).  See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

There are two exceptions to the procedural default doctrine.  A federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice

10

stemming from, the procedural default.  <u>Wainwright v. Sykes</u>.   In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'  *Murray v. Carrier*, 477 U.S. 478, 488 (1986)."   <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 675 (3d Cir. 1996).   In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . .  This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'"  <u>Werts v. Vaughn</u>, 228 F.3d 178, 193 (3d Cir. 2000) (citations and some internal quotations omitted).  The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice."   In <u>Werts</u>, the Third Circuit explained this exception as follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice."   Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [[(1986)].  Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

<u>Id</u>.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  <u>See</u>, <u>e.g.</u>, <u>Carter v. Vaughn</u>, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from

considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice.  See, e.g., Wainwright v. Sykes;  McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, at *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999);  McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278,  at *3 n.3 (7th Cir. 1994); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993).

In the instant case, Ground One was found by the Superior Court to have been untimely filed   Com. v. Thomas, No. 682 WDA 2017, slip op. (Pa. Super. Ct., 11/21/2017), ECF No. 30-13 at 8 ("It may be that Appellant did not learn of Brown's willingness to testify on Appellant's behalf until December 16, 2016, but the discovery of Brown's newfound willingness does not demonstrate that the 'facts' alleged in Brown's affidavit – namely, that Appellant was unaware Brown would shoot their victim—were previously unknown to Appellant.  Therefore, we find the PCRA court properly dismissed Appellant's petition for his failure to prove he qualified under Section 9545(b)(1)(ii)'s time-for-filing exception" to the PCRA statute of limitations).

Procedural default will not be found based upon the failure to comply with the state procedural rule unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991).   A state rule of procedure is "adequate" if it is firmly established and applied with some consistency/regularly followed.  Doctor v. Walters, 96 F.3d

675, 684 (3d Cir. 1996), *abrogated on other grounds by*, Beard v. Kindler, 130 S.Ct. 612 (2009). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law. . ."). Pennsylvania's PCRA statute of limitations is "independent" as it seeks only to ask whether the issue was raised in accordance with the state statute of limitations and hence, does not involve any question of federal law. It also appears "adequate" as the rule has been applied with sufficient consistency at the time of Petitioner's failure to comply with the PCRA statute of limitations. Pettus v. Colons, CIV.A. 10-951, 2015 WL 1444669, at *10 (W.D. Pa. Mar. 30, 2015) ("because the state courts relied on an independent and adequate state law procedural rule, i.e., the PCRA statute of limitations, in refusing to consider Petitioner's claims (enumerated as Grounds Three to Seven in his Amended Habeas Petition) on the merits, Petitioner has procedurally defaulted Grounds Three to Seven for purposes of federal habeas review.").

The Court notes that Respondents raised, in their Answer to the Amended Petition, the affirmative defense of procedural default with respect to Ground One. ECF No. 28 at 21 – 22. Petitioner has not rebutted this affirmative defense. Robinson v. Johnson, 313 F.3d 128, 134–35 (3d Cir. 2002) ("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed."). Petitioner did not file a traverse and has failed to show why the affirmative defense of procedural default should not succeed.

Accordingly, the Court finds Ground One is procedurally defaulted.  Therefore, Ground One cannot afford a basis for federal habeas relief.

## 2. Ground One is not cognizable in federal habeas proceedings.

In the alternative, Petitioner seemingly claims in Ground One that he is entitled to habeas relief simply because he has produced new evidence of his actual innocence.  He appears to claim that solely on the basis of being actually innocent of the murder, he is deserving of federal habeas relief (at least with respect to the third-degree murder conviction).  By this claim, Petitioner is making a freestanding claim of actual innocence, but such a claim is simply not cognizable in federal habeas proceedings.

In contrast to a free standing claim of actual innocence, there is claim of actual innocence which can act as a "gateway" through which a federal habeas petitioner may pass to have an otherwise procedurally barred constitutional claim considered on the merits, see Schlup v. Delo, 513 U.S. 298 (1995), which is known as a "gateway actual innocence" claim or also known as the miscarriage of justice exception to the procedural default doctrine.  However, a freestanding claim of actual innocence, such as Petitioner raises in Ground One, must be denied because it is not cognizable in federal habeas.  Albrecht v. Horn, 485 F.3d 103, 121-22 (3d Cir. 2007) (citing Herrera v. Collins, 506 U.S. 390 (1993)).

In Herrera, the United States Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." 506 U.S. at 400, 404.  The Supreme Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes

14

before the federal habeas court not as one who is innocent, but as a convicted criminal.  Id. at 399-400.  Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions.  Id. at 401 (internal quotations and citations omitted).  The Supreme Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."  Id. at 400.  "Federal courts are not forums in which to relitigate state trials."  Id. at 401 (quotations and citation omitted).  Thus, the Court rejected Herrera's claim that, even if the proceedings that resulted in his conviction and sentence were entirely fair and error free, his innocence would make his execution a constitutionally intolerable event.

Based upon the Herrera decision, the United States Court of Appeals for the Third Circuit Court has repeatedly emphasized that in non-capital cases such as this case:  "[i]t has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'"  Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (quoting Herrera, 506 U.S. at 400); Albrecht, 485 F.3d at 121-22).  Thus, Petitioner's freestanding claim of actual innocence as raised in Ground One is not cognizable under the federal habeas corpus statute and cannot afford a basis for relief in these federal habeas proceedings.[1]

---

[1]  In Herrera, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant

(footnote continued. . .)

Again, Respondents raised in their Answer the issue that Ground One is not cognizable. ECF No. 28 at 24 – 25. Petitioner has not replied. Based on the clear law, Petitioner has not and cannot overcome this rule of non-cognizability.

**B.   Ground Two was procedurally defaulted.**

In Ground Two, Petitioner claims his guilty plea was unlawfully induced. As supporting facts, he asserts that:

> On May 2, 2011, me and my trail [sic] counsel Mr. Patarini were set to enter a guilty plea for a term of 40-80 years incarceration. On this day, I was in the bullpen [a holding cell] with inmates [of the Allegheny County Jail] Anthony Thomas and Robert Brown. All three [3] of us went into the restroom area and began to smoke two joints of marijuana and each of us took [1] one ecstacy [sic] pill and [1] Remaron [a physc [sic] med often prescribed to inmates to help with depression] that I had.

ECF No. 27 at 7.

In their Answer, Respondents point out that Petitioner procedurally defaulted Ground Two because the Superior Court found that Petitioner waived this claim by failing to raise such a claim in either of his two PCRA petitions that he had filed in 2013 or 2014.  ECF No. 28 at 22. This Court agrees.

---

unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim."  506 U.S. at 417.  In House v. Bell, 547 U.S. 518 (2006), the Supreme Court once again left open the question of whether a truly persuasive freestanding innocence claim in a capital case would warrant federal habeas relief if no state avenues of relief remain available.  Id. In District Attorney's Office for the Third Judicial District v. Osborne, 557 U.S. 52 (2009), which was a non-capital case in which a state inmate brought an action under 42 U.S.C. § 1983 to compel the State of Alaska to release biological evidence so that it could be subject to DNA testing, the Supreme Court, in dicta, assumed without deciding that an actual innocence claim could be brought in habeas, but noted "the high standard any claimant would have to meet" to succeed with such a claim.  Id. at 71, citing House and Herrera.

16

The Superior Court specifically held that "Appellant's claims regarding information known by his mother and his being under the influence of drugs at the time of the plea are not stated in either his 2013 or 2014 PCRA petition.   Accordingly, they are waived.   ***See, e.g., Commonwealth v. Camps***, 772 A.2d 70, 74 (Pa. Super. 2001)('[A] review of Appellant's PCRA petition…reveals that he failed to raise the above claims in his petition. As such these claims are waived.')"   ECF No. 14-7 at 40.

As previously explained:

> Pennsylvania applies a rule of waiver in multiple contexts. An issue not raised at trial or on appeal is waived. *Commonwealth v. Agie*, 296 A.2d 741, 741 (Pa. 1972) ("We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.") (citations omitted); *Commonwealth v. Steffish*, 365 A.2d 865 (Pa. Super. 1976); *Commonwealth v. Perea*, 381 A.2d 494, 496 (Pa. Super. 1977) ("The reason our review is confined to the one issue is because the other issues were not raised in the trial below or in post-verdict motions. The appellate courts of Pennsylvania have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal.")[.]

Barrett v. Patrick, CIVA 05-370J, 2006 WL 2077019, at *6 (W.D. Pa. July 24, 2006). Accordingly, this Court finds that Petitioner procedurally defaulted Ground Two based upon the Superior Court's conclusion that he waived this claim.

Furthermore, Petitioner has not asserted cause and prejudice or a miscarriage of justice to excuse this procedural default.   Therefore, having procedurally defaulted Ground Two and having failed to show why the procedural default should be excused despite Respondents asserting the affirmative defense of procedural default, Ground Two cannot form the basis for federal habeas relief.

### 1. Petitioner cannot show any excuse for the procedural default of Ground Two.

In the interest of thoroughness, this Court has considered the possibility that Petitioner intended to raise Ground One's claim of actual innocence not merely as a free standing claim but also as a gateway claim, i.e., a claim of actual innocence  seeking to overcome the procedural default and invoking the miscarriage of justice exception to procedural default.  There are at least two problems with a gateway claim of actual innocence.

### a. The claim of innocence was itself procedurally faulted.

The first problem with asserting a claim of actual innocence of the convictions based on the affidavit on which Ground One rests, is that this Court has already found that Ground One was procedurally defaulted.  The rule is that a claim of actual innocence, like the claim of cause and prejudice, can itself be procedurally defaulted.  See, e.g., Brown v. Hooks, 176 F. App'x 949, 954–55 (11th Cir. 2006) ("The Ferguson affidavit was dated May 25, 2004, and Brown filed it in the district court on July 8, 2004. Giving Brown the benefit of the later date, July 8, 2004, for purposes of computing the date of 'discovery' under Rule 32.2(c), Brown had until January 8, 2005 to file a Rule 32.1(e) petition based on the newly discovered evidence. Indeed, as early as August 2, 2004, the State informed Brown of the viability of his actual-innocence claim, if asserted in a Rule 32 petition. In response, Brown not only did not file such a petition but in fact objected to the R & R's characterization of the claim as newly discovered. It is too late for him to return to state court now, because Rule 32.2(c)'s six-month limitations period has expired and he is barred from raising the claim. Accordingly, the claim is procedurally defaulted for purposes of federal habeas review.").   Cf.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can

18

itself be procedurally defaulted[.]").

Because Petitioner's claim of actual innocence based on the affidavit was itself procedurally defaulted, it cannot serve to excuse the procedural default of Ground Two.

### b.  The affidavit is insufficient to establish actual innocence.

The second problem with considering the affidavit as a basis for invoking the miscarriage of justice exception is that the affidavit falls woefully short of the very high standard for establishing actual innocence in a gateway claim and moreover, the affidavit is relevant solely to the murder conviction arising out of the death of the victim and is not relevant to Petitioner's admitted shooting at the house out of which the second set of charges arise.

This Court has previously explained the very high bar that Petitioner must meet to succeed on an actual innocence gate-way claim.

> In order to successfully invoke the "actual innocence" exception, which is also known as, the "miscarriage of justice" exception a petitioner must:
>
>> satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.
>
> Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), cert. denied, 498 U.S. 881 (2001). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.
>
> Petitioner's evidence fails to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Amrine, 238 F.3d at 1029. The focus under the "actual innocence" exception is on

establishing actual innocence as opposed to legal innocence, and so this Court is not bound to consider only the evidence introduced at a habeas petitioner's criminal trial. See Schlup, 513 U.S. at 327 – 28, wherein the court held that "[i]n assessing the adequacy of petitioner's showing [of actual innocence], therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing [habeas] tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Indeed, the Supreme Court explained more fully what it meant by allowing a court to consider evidence not heard at trial when it declared that

> The habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

Id. at 328. In conducting this analysis, this court is guided by the principle that a "district court must not use its independent judgment as to whether, in light of new evidence, reasonable doubt exists. Rather, the district court must 'make a probabilistic determination about what reasonable, properly instructed jurors would do.' " Abu-Jamal v. Horn, No. Civ.A. 99-5089, 2001 WL 1609690, at *9, (E.D. Pa. Dec. 18, 2001), aff'd, 520 F.3d 272 (3d Cir. 2008), cert. granted and judgment vacated on other grounds by, 558 U.S. 1143 (2010).

Bennett v. Glunt, CV 13-1775, 2016 WL 3917421, at *6–7 (W.D. Pa. July 20, 2016) (footnotes omitted).

In light of Petitioner's confession, and the corroborating evidence, including the video surveillance recording of the four young men following the victim all of whom were able to be identified by the police, including Petitioner himself, the affidavit simply fails to establish that no reasonable juror would have convicted Petitioner of the crimes of, inter alia, third-degree murder (to which he pleaded guilty), yet alone, of second-degree murder.  And this is so, even if Petitioner was not the individual who actually shot the victim (as he relies upon the affidavit to establish) because under Pennsylvania state law, all that is necessary to be found guilty of

second-degree murder, as a co-conspirator, is to show that the co-conspirator possessed the shared intent to commit the felony. See, e.g., Rainey v. Varner, 603 F.3d 189, 202 (3d Cir. 2010).

In Rainey, the United States Court of Appeals for the Third Circuit explained second-degree murder under Pennsylvania law as follows:

> Assuming that the evidence presented at trial was insufficient to establish a shared intent to kill, it was nonetheless sufficient to establish the elements of second degree felony murder. Rainey was convicted of robbery, and the evidence clearly established that a death occurred during that robbery, which is sufficient to prove second degree murder under Pennsylvania law. See 18 Pa. Cons.Stat. Ann. § 2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."). Under Pennsylvania law, "[a] person who has been convicted of murder of the second degree shall be sentenced to a term of life imprisonment." 18 Pa. Cons.Stat. Ann. § 1102(b) (1995); accord Castle v. Pennsylvania Bd. of Probation & Parole, 123 Pa.Cmwlth. 570, 554 A.2d 625, 627 (1989) (holding that a conviction for second degree murder carries a mandatory life sentence under Pennsylvania law).

Id.

Considering all of the evidence in the record before this Court, it is clear to this Court that Petitioner shared the intent to rob the victim, and therefore, was guilty of second-degree murder and the affidavit does not exonerate him of the fact that he shared the intent to commit the robbery.[2]  That he was able to plead guilty to third-degree murder and avoid the mandatory

---

[2] In fact, the affidavit seems to confirm that Petitioner shared the intent to rob the victim:

> I then started discussing with the three dudes whom were Derek Ambush, Larry Brown, and Tyrone Thomas, a plan to rob the next person I see.  Right after we stopped talking about it, I saw the victim Mark Barry walking his dog down Woodland Avenue.  I then stated "There go our first vic".  We all started to follow the victim until he turned onto Mullins Street.  We turned onto Mullins Street behind him….

ECF No. 27-1 at 1.  Viewing this evidence in the light most favorable to the Commonwealth, it is

(footnote continued. . .)

21

sentence of life in prison for a likely second-degree murder conviction is a windfall for Petitioner in this Court's estimation.   Accordingly, Ground Two is procedurally defaulted and Petitioner's "new evidence" of the affidavit fails to establish a miscarriage of justice exception to excuse the procedural default of Ground Two.   If anything, the affidavit confirms Petitioner's guilt of second-degree murder.

### C.  Ground Three – Ineffective assistance of counsel claim is meritless.

In Ground Three, Petitioner asserts that he received ineffective assistance of plea counsel. More specifically, Petitioner states as supporting facts that:

> Trail [sic] counsel Christopher Patarini blantly [sic] ignored the many inconsistent statements that were made against me and the piles of evidence that puts witnesses and my codefendant's credibility in question.  Mr. Patarini also ignored the fact that I was under the influence of ecstacy [sic] pills and marijuana that I consumed with fellow inmates before I entered my plea of guilty.

ECF No. 27 at 8.

Even reviewing this claim *de novo*, the Court has no hesitancy in concluding that Petitioner has failed to carry his burden under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to show either prong of ineffectiveness.  Petitioner has failed to show that his counsel engaged in any deficient performance because a reasonable hypothetical counsel would have recommended that Petitioner take the plea deal being offered by the Commonwealth in light of the potential life in prison sentence if Petitioner were to be convicted of second-degree murder.[3]   Even if

---

fairly strong inferential evidence of a shared intent on the part of all four to commit a robbery of the victim. Hence, the affidavit fails to establish Petitioner's actual innocence of either the crime of second-degree murder or the lesser offense of third-degree murder to which he ultimately pleaded guilty.

[3] As well summarized previously,

(footnote continued. . .)

22

Because the Strickland test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable. As the Court of Appeals for the Eleventh Circuit has explained:

> To uphold a lawyer's strategy, we need not attempt to divine the lawyer's mental processes underlying the strategy.... our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one. See generally *Harich v. Dugger*, 844 F.2d 1464, 1470-71 (11th Cir. 1988) (en banc) (concluding—without evidentiary hearing on whether counsel's strategy arose from his ignorance of law—that trial counsel's performance was competent because hypothetical competent counsel reasonably could have taken action at trial identical to actual trial counsel); *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995) (holding—where petitioner alleged that trial counsel's mental processes were impaired by drug use—that, because an objective standard is used to evaluate counsel's competence, "once an attorney's conduct is shown to be objectively reasonable, it becomes unnecessary to inquire into the source of the attorney's alleged shortcomings")....
> We look at the acts or omissions of counsel that the petitioner alleges are unreasonable and ask whether some reasonable lawyer could have conducted the trial in that manner. Because the standard is an objective one, that trial counsel (at a post-conviction evidentiary hearing) admits that his performance was deficient matters little. *See Tarver v. Hopper*, 169 F.3d 710, 716 (11th Cir. 1999) (noting that "admissions of deficient performance are not significant"); *see also Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) ("[I]neffectiveness is a question which we must decide, [so] admissions of deficient performance by attorneys are not decisive.").

Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir. 2000). See also Strickland, 466 U.S. at 689 (one claiming ineffectiveness must show that the challenged action "might be considered sound trial strategy.")

In light of the foregoing, the Court of Appeals for the Third Circuit has explained, "[i]t is [ ] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (citation omitted).

(footnote continued. . .)

23

Petitioner could establish deficient performance with respect to his counsel allegedly knowing that Petitioner was under the influence of drugs as the time of the plea, he cannot establish prejudice.

Petitioner fails to show prejudice as is his burden.  By taking the plea, Petitioner avoided a real possibility of a life sentence if convicted of second-degree murder, not to mention if he had been sentenced to consecutive sentences on the two sets of charges.  Insofar as Petitioner claims his counsel knew that Petitioner was allegedly under the influence of drugs at the time of the guilty plea proceedings before the judge, Petitioner has failed to show prejudice, which, in this context, means that he must show his mental processes were so impaired by the alleged ingestion of the drugs as to render his plea other than knowing and intelligent and voluntary. Given that Petitioner's convictions are presumed constitutional in these federal habeas proceedings,[4] it is his

---

[4]   As this Court has previously explained:

> We note that Petitioner's convictions and sentences are presumed to be constitutional and valid. *Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir. 1996) ("On collateral attack...., the state receives the presumption of regularity and all reasonable inferences.") (*quoting Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993)); *Schlette v. California*, 284 F.2d 827, 833-34 (9th Cir. 1960) ("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Thus, the burden is clearly upon Petitioner to show that his sentence is unconstitutional or illegal. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) ("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."); *Riggs v. Federal Bureau of Prisons*, Civ. A. No. 5:06-cv-00687, 2007 WL 1655240, at *3 (S.D.W. Va., June 6, 2007) ("The petitioner carries the burden of proving he is entitled to habeas corpus relief
>
> (footnote continued. . .)

burden to establish that he was so impaired by the drugs that his plea was rendered not knowing or voluntary.  U.S. v. Wearing, 3:04 CR 00092-8, 2011 WL 477855, at *10 (W.D. Va. Jan. 27, 2011) ("the ultimate burden is on the defendant to show that his 'mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea.'"), *report and recommendation adopted*, 2011 WL 918343 (W.D. Va. Mar. 15, 2011), *aff'd*, 446 F. App'x 641 (4th Cir. 2011). Petitioner has failed to make such a showing.

In sum, Petitioner utterly fails to show either deficient performance on the part of his plea counsel in recommending him to take the plea deal as measured by an objective standard of reasonableness or any possible prejudice stemming from any deficient performance. Accordingly, the Court finds that Ground Three provides no basis for the grant of federal habeas relief.

## V.  CONCLUSION

For the reasons set forth herein, Petitioner procedurally defaulted Grounds One and Two and Ground Three is meritless.  Accordingly, the Amended Petition is properly denied.

## VI.  CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).

---

under 28 U.S.C. § 2241"). Petitioner has failed to carry that burden.

Anderson v. Atty. Gen. of Pennsylvania, CV 17-1347, 2018 WL 994052, at *2 (W.D. Pa. Feb. 21, 2018).

Applying this standard to the instant case, the Court concludes that jurists of reason would not find it debatable whether this Court was correct in finding Grounds One and Two to have been procedurally defaulted and in finding Ground Three to be meritless.   Accordingly, a certificate of appealability is properly denied.

Accordingly, the following order is entered:

AND NOW this 25th day of November 2020, the Amended Petition is hereby **DENIED**. As jurists of reason would not find the foregoing disposition debatable, a certificate of appealability is also **DENIED**.

BY THE COURT:

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     TYRONE THOMAS
        KA-0033
        SCI Huntingdon
        1100 Pike Street
        Huntingdon, PA 16654

        All Counsel of Record via CM-ECF

26